IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HALEY WILLIAMS                                                    PLAINTIFF

VS.                                            CIVIL ACTION NO. 3:14cv785-FKB

CAROLYN W. COLVIN, COMMISSIONER                        DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION
_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Haley Williams of the

Commissioner of Social Security's final decision denying Williams's application for

Supplemental Security Income ("SSI") benefits. In rendering this Memorandum Opinion and

Order, the Court has carefully reviewed the Administrative Record [8] regarding Williams's

claims (including the administrative decision, the medical records, and a transcript of the hearing

before the Administrative Law Judge ("ALJ")), Plaintiff's Motion for Summary Judgment [9]

and supporting Memorandum [10], Defendant's Motion for an Order Affirming the

Commissioner's Decision [13] and supporting memorandum [14], and Plaintiff's rebuttal

memorandum [15].  The parties have consented to proceed before the undersigned United States

Magistrate Judge, and the District Judge has entered an Order of Reference.  28 U.S.C. § 636(c);

Fed. R. Civ. P. 73.

For the reasons discussed in this Memorandum Opinion and Order, the Court finds that

the Commissioner's decision should reversed and remanded for further consideration.

Accordingly, Plaintiff's Motion for Summary Judgment [9] is hereby granted, and Defendant's

Motion for an Order Affirming the Decision of the Commissioner [13] is hereby denied as set

forth in this Opinion.

I. FACTS AND PROCEDURAL HISTORY

On March 29, 2010, Vivian Pittman, mother of Plaintiff, filed for Supplemental Security Income ("SSI") disability benefits on behalf of Williams, asserting an onset date of December 1, 1992. [8] at 179.[1]  Williams was born on June 29, 1992, and she was seventeen years old at the time of filing.  *Id.*  She reached eighteen years of age on June 29, 2010, prior to her first hearing before an ALJ. Thereafter, she was considered a "younger individual" pursuant to the regulations.  20 C.F.R. § 416.120(c)(4).  In the request for disability, Williams alleged that she was disabled as of December 1, 1992,  because of Tetralogy of Fallot,[2]  blood problems, and heart trouble.  *Id.* at 203.  Plaintiff obtained counsel on September 16, 2010.  *Id.* at 138.

The Social Security Administration denied Williams's application initially and upon reconsideration. *Id.* at 105, 106.  Williams requested a hearing, which was held on April 9, 2012, and subsequently the ALJ issued an unfavorable decision finding that Williams was not disabled.  *Id.* at 107.  Upon review by the Appeals Council, the Appeals Council vacated the ALJ's decision and remanded the case for further evaluation and a new decision.  *Id.* at 131.  After further review and a second hearing, the ALJ issued another unfavorable decision on October 10, 2013.  *Id.* at 12, 66.  The Appeals Council denied Plaintiff's request for review on September 14,

---

[1]Citations reflect the original pagination of the administrative record.

[2] A congenital heart defect, Tetralogy of Fallot is a rare condition caused by a combination of four defects in the heart present at birth, as follows: a hole between the lower chambers of the heart, an obstruction from the heart to the lungs, placement of the aorta over the hole in the lower chambers, and an overly thickened muscle surrounding the lower right chamber of the heart. American Heart Ass'n, *Tetralogy of Fallot*, http://www.heart.org/HEARTORG/Conditions/CongenitalHeartDefects/AboutCongenitalHeartD efects/Tetralogy-of-Fallot_UCM_307038_Article.jsp.  The condition prevents the normal amount of blood from being pumped to the lungs and also results in some oxygen-poor blood being pumped to the body through the hole in the wall between the right and left ventricles.  *Id.*

2014.  *Id.* at 1. Thereafter, Plaintiff filed this action.  The matter has been briefed and is now ripe for review.

In his October 2013 decision, the ALJ evaluated Williams's impairments based upon both the childhood standard of disability for the time period prior to her turning eighteen and the adult standard of disability for her conditions after she turned eighteen.  20 C.F.R. § 416.920(a). As for the childhood evaluation, the ALJ found that Williams had the following severe impairments prior to turning eighteen: status post repair tetralogy of Fallot, status post attempted stenting with displacement and subsequent removal and reconstruction, impulse control not otherwise specified, and mood disorder not otherwise specified. [8] at 17.  Considering the record, the ALJ concluded that Williams did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  *Id.*  The ALJ further found that Williams did not have an impairment or combination of impairments that functionally equaled the listings.  *Id.*  Plaintiff does not challenge the foregoing determination, but, instead, focuses her arguments on the ALJ's findings regarding the adult standard of disability.

Turning to the adult standard of disability, the ALJ found that since reaching the age of eighteen, Williams has continued to have a severe impairment or combination of impairments including obesity, status post repair of tetralogy of Fallot, pacemaker placement, and affective disorder.  *Id.* at 24.  However, the ALJ concluded that Williams does not have an impairment or combination of impairments that meets or medically equals a listed impairment pursuant to 20 C.F.R. § 416.920(d). With regard to Williams's mental impairment, the ALJ specifically found that her mental impairment does not meet or medically equal the criteria of Listing 12.04.  *Id.* at 24.  Plaintiff does not challenge this determination.

-3-

The ALJ also discussed Williams's physical limitations based on her mental condition, her heart condition, and her obesity. *Id.* at 26 -30.   He noted her complaints of chest pain and shortness of breath, as well as her apprehension of strangers and crowds.  *Id.* at 26.  He observed that she had been hospitalized for mental health treatment after she hit her mother at age 18 and engaged in fights with other relatives.  *Id.*[3]  After hospitalization and continued mental health treatment, the ALJ observed that her medication helps keep her calm.  *Id.*  At the time of the hearing, Williams prescription medications included Atenolol (for heart treatment), Zoloft, Neurontin, and Remeron.  *Id.*

The ALJ also noted that Williams had undergone another heart surgery in 2008 for conduit revision, and that she underwent pacemaker placement in 2010.  *Id.*  The ALJ commented that since that time, treating physicians had found her condition to be "generally unremarkable."  *Id.*  December 2012 chest x-rays showed no evidence of cardiopulmonary disease, yet she had a large number of emergency room and doctor visits for chest pain in 2011 and 2012.  *Id.*  The ALJ observed that Williams has not been admitted to the hospital for treatment or extensive testing to determine a cardiac explanation for her chest pain, but that she had a cardiac workup in May 2012, which was negative.  *Id.* at 27.

With regard to Williams's physical and strength limitations, the ALJ states that "there is reason to conclude that claimant's physical condition would restrict her lifting and carrying as

---

[3]Williams was hospitalized at the East Mississippi State Hospital from January 11, 2011, to February 18, 2011, pursuant to an Order of the Chancery Court of Scott County, Mississippi, for treatment of "[a]ntisocial/criminal behavior with arrests and excessive fighting," thoughts of suicide, thoughts of harm to others, possible hallucinations, aggression, combativeness, and defiance of authority.  *Id.* at 650-651.  Upon discharge, her condition had improved, and the nurse practitioner stated that if Williams "remains medication and treatment compliant, [and] follows the instructions, [then] her prognosis is favorable."  *Id.* at 656.

well as postural activities.  She testified to scarring on her non-dominant side, which is consistent with medical evidence and she said this restricts overhead reaching.  The residual functional capacity includes restrictions consistent with this."  *Id.* at 27.

The ALJ considered Plaintiff's obesity and its impact on her ability to work.  *Id.*  He noted that she had previously testified that she is five feet, four inches tall and weighs 318 pounds, "giving her a body mass index exceeding 55, which is morbid obesity."  *Id.* The ALJ observed that her obesity was confirmed in the record.  *Id.* at 28.

Finally, the ALJ considered two opinions from two of her treating cardiologists, Dr. Avichal Aggarwal and Dr. Charles Gaymes.  According to the medical records and Plaintiff's testimony, Dr. Aggarwal briefly took over Williams's cardiac care from Dr. James Clinton Smith, after Dr. Smith retired.[4]  *Id.* at 666, 87-89. Dr. Aggarwal saw Williams only two times: in August 2011 and January 2012.  *Id.* at 28. At the hearing, Plaintiff testified that after her second visit with Dr. Aggarwal, she asked that her next appointment be made with Dr. Gaymes, instead of Dr. Aggarwal, and she never saw Dr. Aggarwal again. *Id.* at 88. During the September 2013 hearing, Williams testified that she sees Dr. Gaymes "at least once every six months," and the medical records show that Dr. Gaymes saw her in May 2012, June 2012,[5] August 2012, and April 2013. *See id.* at 1125, 1139, 1149-1151. Drs. Smith, Aggarwal, and Gaymes were all physicians in the Department of Pediatric Cardiology at the University of Mississippi Medical

---

[4]The records reflect that Dr. Smith treated Williams on a regular basis up to May 2011. *Id.* at 637.  The Court observes that the administrative record does not include medical records dating back to Williams's birth.  Dr. Smith's treatment notes in the record begin in January 2009, *id.* at 492, and surgical records date back to December 2008.  *Id.* at 290-298.

[5]Although the medical record does not contain notes for a June 2012 visit to Dr. Gaymes, the record references that Williams had a visit with Dr. Gaymes on June 20, 2012. *Id.* at 1139.

Center (UMMC). *See, e.g., id.* at 481, 666, 667.

Although not detailed in the ALJ's opinion, Dr. Aggarwal completed a Pulmonary Residual Functional Capacity Questionnaire in August 2011. *Id*. at 464-468. In the questionnaire, Dr. Aggarwal stated that during a typical workday, Williams's experience of pain or other symptoms were severe enough to interfere often with attention and concentration needed to perform even simple work tasks. *Id*. at 465. Dr. Aggarwal's opinions in the questionnaire also included that Williams could stand only 15 minutes at one time before needing to sit down, could sit and stand/walk less than 2 hours in an 8 hour day, would have to take unscheduled breaks during a work day, and could only occasionally lift and carry less than ten pounds. Dr. Aggarwal also gave her various postural and environmental restrictions, and noted that she would have to miss work more than four times a month as a result of her impairments or treatments. *Id.*

In response to a request from the ALJ, Dr. Aggarwal sent the ALJ a May 2, 2012, letter in which he stated that he had marked Williams's "combined sitting and standing less than 2 hours in an 8 hour day. . . in error" in his August 2011 questionnaire. *Id*. at 666. In the letter, Dr. Aggarwal further stated that "after carefully reviewing her chart and being more familiar with the severity of her disease I think her activity level should be almost the same as any other healthy individual her age and weight." *Id.* In his opinion, the ALJ characterized the letter as Dr. Aggarwal "essentially withdrawing his opinion." *Id*. at 28.

The ALJ contrasted this assessment with that of Dr. Gaymes, another of Williams's treating cardiologists who is also in the Department of Pediatric Cardiology at UMMC with Dr. Aggarwal.  Approximately three months after Dr. Aggarwal's May 2012 letter, Dr. Gaymes submitted a July 26, 2012, letter, which the ALJ quoted in his opinion, stating:

This [2]0 year old female has a history of complex medical disease including congenital heart disease, mental health problems, and obesity. Haley underwent surgical repair of her congenital heart disease (Tetralogy of Fallot) with a modified right Blalock-Taussig shunt in September 1992. She then underwent ligation of the BT shunt and full repair with a pulmonary homograft in June 1994 with residual mild homograft stenosis and insufficiency. In December 2008, she underwent revision of the homograft with a Rastelli homograft. She then underwent an electrophysiology study in April 2010 and was noted to have ventricular tachycardia and therefore underwent placement of an implantable cardiac defibrillator. Haley continues to have residual mild homograft stenosis and insufficiency, mild to moderate pulmonary stenosis and mild pulmonary insufficiency. Haley has been followed for the above diagnosis since birth and her prognosis is stable. She is currently taking multiple medications for her heart disease as well as her psychiatric problems. She continues to be symptomatic with severe chest pain which makes it hard for her to work steadily. This is a lifelong abnormality and she will require future cardiac surgery to replace the homograft as well as the defibrillator. Given the complex nature of her heart disease and long-term sequelae, kindly consider her for continued medical coverage. . . .

*Id.* at 667, 28.

Dr. Gaymes also completed two Cardiac Residual Functional Capacity Questionnaires, one in May 2012 and another in September 2013. With respect to the nature, frequency, and length of contact, Dr. Gaymes stated, "Follow up every 6 months - 1 year since birth." *Id*. at 253, 1189. For diagnosis, Dr. Gaymes included, "TOF s/p BT shunt in infancy; s/p complete repair utilizing pulmonary homograft in 1994; s/p homograft revision in 2008; Hx of ventricular tachycardia s/p AICD implant in 2010." *Id*. Dr. Gaymes identified the following clinical findings, laboratory and test results to show Williams's medical impairments: "EKG, Echo, AICD interrogation, heart catherizations, surgery." *Id*. Dr. Gaymes indicated that Williams is not a malingerer, and stated that she had the following symptoms: "chest pain, anginal equivalent pain, shortness of breath, fatigue, palpitations, and dizziness." *Id*. He further indicated that she has marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or

anginal discomfort on ordinary physical activity, even when at rest. *Id*.

In the questionnaires, Dr. Gaymes stated that Williams is "[c]apable of [only] low stress jobs," and gave the following reasons for his conclusion: "P/O congenital heart surgery with residual homograft stenosis and insufficiency, ventricular tachycardia with AICD, [and] diagnosed severe emotional impairment." *Id*. at 254, 1190. He also stated that Williams's experience of cardiac symptoms were frequently severe enough to interfere with attention and concentration. *Id*.

As for functional limitations in a competitive work situation, Dr. Gaymes indicated that Williams could stand for 10 minutes at one time before needing to sit down, would sometimes need to take unscheduled breaks during an 8 hour workday, would need to elevate her legs with prolonged sitting, could lift and carry less than 10 pounds occasionally and 10 or 20 pounds rarely but never 50 pounds, and could frequently twist, occasionally stoop, crouch, and climb stairs but could rarely climb ladders. *Id*. at 255-256, 1191-1192. Dr. Gaymes estimated that on the average, Williams is likely to be absent from work more than four times a month as a result of her impairments or treatment. *Id*. at 257, 1193.

In considering the opinions from these two treating cardiologists, the ALJ acknowledged that Dr. Aggarwal had only seen Williams two times, but then stated, "I do not see from any record that [Dr. Gaymes] saw the claimant before or since April 2010." *Id*. at 29. The ALJ further stated, "I do not see any evidence Dr. Gaymes has seen the claimant more frequently or more recently than Dr. Aggarwal." *Id*.

Determining the weight to give to Dr. Gaymes's opinions, the ALJ ultimately found as follows:

-8-

> Dr. Aggarwal, who has seen her more recently, and who says he has reviewed
> her records, states that she has "almost" the same capacity of others of her age
> and weight. Dr. Gaymes is therefore inconsistent with other substantial evidence
> by another treating pediatric cardiologist. I therefore do not give Dr. Gaymes
> opinion controlling weight nor even any particular deference.

*Id*. The ALJ further found that Dr. Gaymes's opinions were "not very well supported by medical

signs or diagnostic findings," and stated that Dr. Gaymes "may not have had sufficient data in

making his opinions." *Id*. In addition to finding that he would not give Dr. Gaymes's opinions

"controlling weight nor even any particular deference," the ALJ stated, "I do not accept the

following opinions: his statement of need to alternate positions every 20 to 30 minutes, his

opinion that cardiac symptoms interfere with concentration frequently . . . , the need for

unscheduled breaks during the workday, and missing more than four workdays per month." *Id*.

After addressing the opinions of the treating cardiologists, the ALJ then gave "significant

weight" to the non-examining, state agency's doctor, Dr. Karen Hulett. *Id*. at 30. This doctor

opined that Williams could perform "less than a full range of light work." *Id*.

With the foregoing medical records in mind, the ALJ found that Williams has the residual

functional capacity ("RFC"), as follows:

> [S]ince attaining age 18, the claimant has had the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(a) with the following
> additional limitations: she can occasionally crouch, crawl, stoop, kneel, balance
> and climb stairs; she cannot climb ladders, ropes or scaffolds; she cannot be
> exposed to unprotected heights or hazardous machinery; she should not be
> exposed to high concentrations of dusts, fumes or gases; she cannot be exposed to
> extremes of heat or cold; may perform only simple, well-defined tasks with
> simple instructions and simple decisions; she can interact only occasionally with
> the general public; she cannot deal with people as customers; she can work
> around others, however, she cannot supervise the work of others and the work
> should not require frequent communication with coworkers and supervisors; and
> she can adjust to a work routine provided the work is not highly exacting,
> complex or dangerous and she can adjust to gradual change in routine.

-9-

*Id.* at 26.

Considering this RFC and that Plaintiff is a younger individual with a limited education and the ability to communicate in English, the ALJ consulted with a vocational expert to determine if there were jobs that the Plaintiff could perform.  The vocational expert testified that Plaintiff would be able to perform the representative occupations of small parts assembler, bench assembler, and electronic assembler, which are all considered sedentary and unskilled with a specific vocational preparation level of 2.  *Id.* at 31.  Thus, the ALJ determined that Plaintiff has not been disabled since June 28, 2010, through the date of the decision, October 10, 2013.  *Id.*

## II. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the

courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the

Commissioner's decision is supported by the evidence, and the proper legal standards were

applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d

208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

### III. DISCUSSION OF THE ALLEGED ERRORS
### AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision should be reversed for the following reasons:

1.  The ALJ's Step 5 finding that Claimant can still perform jobs existing in the national
economy is unsupported by substantial evidence.

A.     The ALJ's hypothetical question to the VE did not include restriction to
Claimant's overhead reaching, although that limitation was recognized by
the ALJ in his opinion.

B.     A vocational expert's testimony based on a defective hypothetical
question does not constitute substantial evidence to support an ALJ's
decision.

C.     A claimant's opportunity to cross-examine a vocational expert does not
cure a defective hypothetical question.

2.  The ALJ failed to give due consideration to medical opinion evidence including that
of Claimant's treating physician.

[10] at 2-3.

#### A.  Is the ALJ's decision at Step 5 supported by substantial evidence?

Plaintiff argues that the ALJ's decision that she can perform certain jobs is based upon

the flawed question posed to the vocational expert, therefore the decision is not based on

substantial evidence.  More specifically, Plaintiff argues that the vocational expert's testimony

was premised on a defective hypothetical question that did not include a restriction on overhead

reaching, even though this restriction was recognized by the ALJ in his decision. Plaintiff is

-11-

correct that in his decision, the ALJ recognized that "[t]he residual functional capacity includes restrictions" on overhead reaching. [8] at 27. Plaintiff is also correct that the ALJ's hypothetical posed to the vocational expert did not include this restriction, *see id*. at 99-101, and that the final residual functional capacity did not include a restriction on overhead reaching. *See id*. at 26.

The Fifth Circuit has clearly stated when a defective hypothetical question will produce reversible error, as follows:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)(emphasis added).  Although the *Bowling* court considered whether a claimant or his representative had been given an opportunity to correct an ALJ's error in the hypothetical, *Bowling* "did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability."  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

In this case, the ALJ's hypothetical question posed to the vocational expert made no mention of any restrictions on overhead reaching, which the ALJ specifically recognized as a limitation on Plaintiff's residual functional capacity. Although Plaintiff's attorney posed additional questions to the vocational expert, his questions focused on his view of Williams's cardiac and mental state restrictions, not on her limitations regarding overhead reaching. Nevertheless, the failure of Williams's attorney to point out the deficiency in the hypothetical does not "salvage" the ALJ's hypothetical.  When the ALJ fails in his duty to develop the facts

fully and fairly relating to a plaintiff's claim for disability benefits, his decision is not substantially justified. *Boyd*, 239 F.3d at 708.  Accordingly, because the hypothetical did not incorporate the overhead reaching limitations recognized by the ALJ, thereby preventing the vocational expert from addressing whether jobs exist with this limitation, the ALJ's decision is not supported by substantial evidence.  Put another way, the ALJ did not carry his burden to show that, despite Williams's impairments, she could perform available work.  Therefore, this case should be remanded to the Commissioner to determine Williams's eligibility for disability benefits based on consideration of her limitations on overhead reaching, as recognized by the ALJ in his opinion, including consultation with a vocational expert to consider Plaintiff's limitations on overhead reaching.

<u>B.  Did the ALJ fail to give due consideration to medical opinion</u>

<u>evidence including that of Claimant's treating physician?</u>

Plaintiff next argues that the ALJ committed error by failing to evaluate the opinion of Dr. Gaymes, one of Plaintiff's treating cardiologists, pursuant to 20 C.F.R. § 404.1527(c). The Court agrees.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th

Cir. 2000)(emphasis in original).

The factors required to be considered under 20 C.F.R. § 404.1527(c) are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any other factors brought to the ALJ's attention. *Bentley v. Colvin*, 2015 WL 5836029, *8 n. 10 (N.D. Tex. Sept. 30, 2015); 20 C.F.R. § 404.1527(c) (2015). The "six-factor analysis only comes into play after the ALJ has determined that a treating source's medical opinion is not entitled to controlling weight." *Bentley*, 2015 WL 5836029 at *8.

In his opinion, the ALJ chose not to give the opinion of Dr. Gaymes, one of Plaintiff's treating cardiologists, "controlling weight nor even any particular deference," because he found it "inconsistent with other substantial evidence by another treating pediatric cardiologist." [8] at 29. The other treating pediatric cardiologist was Dr. Aggarwal, and the other "substantial" evidence was Dr. Aggarwal's May 2012 letter stating that he thought Williams "should be *almost* the same as any other individual her age and weight." *Id*. at 666, 29 (emphasis added).

The Court finds that Dr. Aggarwal's May 2012 letter does not meet the standard of reliability required by *Newton* to render inapplicable the ALJ's duty to conduct the six-factor analysis under 20 C.F.R. § 404.1527(c). The May 2012 letter does not meet *Newton*'s reliability standard for several reasons.

First, in his letter, Dr. Aggarwal provides no details or explanation as to what he means

-14-

by "almost" and provides no specifics as to what Williams's restrictions would be. *See* [8] at 666. Conversely, Dr. Gaymes gave a detailed analysis of Williams's restrictions and limitations with specific diagnoses, clinical findings, and tests results to support his opinions in his July 2012 letter and his May 2012 and September 2013 Cardiac Residual Functional Capacity Questionnaires. *See id.* at 667, 253-258, 1189-1194.

Further, the ALJ based his opinion, in part, on an erroneous factual conclusion, which directly contradicted the record, about the treating relationship between Dr. Gaymes and Williams. Specifically, the ALJ stated, "[o]n April 19, 2010, [Dr. Gaymes] performed catheterization on her. . . .  I do not see from any record that he saw the claimant before or since April 2010.  I do not see any evidence Dr. Gaymes has seen the claimant more frequently or more recently that Dr. Aggawal." *Id.* at 29. The record, however, shows that Dr. Gaymes performed the insertion of Williams's defibrillator also in April 2010, in addition to the catheterization.  The record further shows that Dr. Gaymes examined Williams in May 2012, June 2012, August 2012, and April 2013, whereas Dr. Aggarwal only saw her in August 2011 and January 2012. *Id.* at 1125, 1139, 1149-1151, 1128-1129, 630-631.

In addition, the ALJ stated in his opinion that in his May 2012 letter, Dr. Aggarwal "essentially withdr[ew] his opinion" from his August 2011 Pulmonary Residual Functional Capacity Questionnaire. *Id.* at 28. However, in his May 2012 letter, the only specific opinion that Dr. Aggarwal identified as having been marked "in error" was his opinion that Williams's "combined sitting and standing [was] less than 2 hours in an 8 hour day." Dr. Aggarwal does not explicitly state in his May 2012 letter that all of his other opinions in the questionnaire were erroneous, for example, that Williams's experience of pain or other symptoms were severe

enough to interfere often with attention and concentration needed to perform even simple work tasks or that Williams would have to take unscheduled breaks during a work day and would have to miss work more than four times a month as a result of her impairments or treatments. Nevertheless, in his opinion, the ALJ stated that he "d[id] not accept" and specifically rejected these opinions from Dr. Gaymes, despite the fact that the other treating cardiologist, Dr. Aggarwal, expressed the same opinions and never explicitly retracted them.

Since the ALJ did not have "*reliable* medical evidence" from Dr. Aggarwal controverting Dr. Gaymes's opinions, he could reject Dr. Gaymes's opinion "*only*" if he performed a detailed analysis under the criteria set forth in 20 C.F.R. § 404.1527(c). *Newton*, 209 F.3d at 453 (emphasis to reliable added); *see Bentley*, 2015 WL 5836029 at *8; 20 C.F.R. § 404.1527(c). The ALJ failed to conduct such an analysis and therefore committed error. Accordingly, this matter must be reversed and remanded in order for the required analysis under 20 C.F.R. § 404.1527(c) to be performed.

## V. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the Court finds that Plaintiff's Motion for Summary Judgment [9] should be granted, and Defendant's Motion for an Order Affirming the Decision of the Commissioner [13] should be denied.

The Court finds that given the record in this case, the ALJ was required to include the recognized restrictions on overhead reaching in his hypothetical and to engage in the analysis under 20 C.F.R. § 404.1527(c). By failing to do so, the ALJ did not satisfy his duty to fully develop the record. *See Newton*, 209 F.3d at 457-58 ("The Fifth Circuit also imposes a duty on an ALJ to develop the facts fully and fairly relating to an applicant's claim for disability benefits.

-16-

If the ALJ does not satisfy his duty, his decision is not substantially justified.")(citation and quotation marks omitted).  It follows, therefore, that the ALJ's decision is not supported by substantial evidence. Accordingly, this matter is hereby reversed and remanded to the Commissioner for further consideration consistent with this opinion.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered.

SO ORDERED, this the 31st day of March, 2016.


 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE